PALMER ET AL., TRUSTEES, *v.* WEBSTER AND ATLAS NATIONAL BANK OF BOSTON, TRUSTEE.

No. 120. Argued January 8, 1941.—Decided February 3, 1941.

*Mr. Hermon J. Wells* for petitioners.

*Mr. Robert H. Davison,* with whom *Mr. Oscar W. Haussermann* was on the brief, for respondent.

By special leave of Court, *Mr. Robert H. Hopkins* for the City of Boston, as *amicus curiae,* urging affirmance.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

In proceedings for the reorganization of the New York, New Haven and Hartford Railroad under § 77 of the Bankruptcy Act,[1] the District Court, in response to a petition of the trustees, ordered them to withhold payment of taxes assessed upon the property of Boston Terminal Company and franchise taxes and bond interest owed by the same company.[2] The Circuit Court of Appeals reversed on the ground that statutes of the

---

[1] 11 U. S. C. § 205.

[2] The order also directed the trustees to withhold payment of taxes approximating $613,000 due by Old Colony Railroad Company, and Boston and Providence Railroad Corporation to Massa-

United States compelled payment by the trustees.[3] The importance of the questions involved, and a conflict of decision,[4] moved us to grant certiorari.

In 1888 Boston and Providence Railroad Corporation leased its property to Old Colony Railroad Company for a term of 99 years. In 1893 Old Colony leased its property, including its leasehold interest in the Boston and Providence property, to New Haven for a term of 99 years. Boston was then served by four railroads entering the city from the South and West: the two lessors, New England Railroad Company, and Boston and Albany Railroad Company.

In 1896 Massachusetts, by a special act, incorporated The Boston Terminal Company,[5] with power to construct and maintain a union passenger station in the southerly part of Boston, and to provide and operate terminal facilities "for the several railroad companies" by the act "authorized to hold the stock" of the company. The Act sets the capital stock at $500,000, and provides that Boston and Albany, New England, Boston and Providence, Old Colony, "and the New York, New Haven and Hartford Railroad Company, being lessee of Old Colony Railroad Company, may each subscribe for and hold" one-fifth thereof.

The management of the company's affairs is vested in five trustees, one to be appointed by each of the five stockholding companies.

All the named railroads, including the New Haven, are required to use the terminal for all their terminal

---

chusetts, and taxes approximating $76,000 due by the same companies to Rhode Island. That portion of the order is not involved in this case.

[3] 111 F. 2d 215.

[4] See *Philadelphia Co.* v. *Dipple, post,* pp. 168, 169–170.

[5] Act of June 9, 1896, Massachusetts Acts and Resolves, 1896, Ch. 516, p. 520.

passenger business in Boston. They are to pay to the terminal company for such use the amounts needed to cover the company's expenses, including interest upon its bonds, and taxes. Each railroad is required to pay in proportion to its use, as agreed amongst them, or, in default of agreement, according to the proportion determined by the railroad commissioners (now the Department of Public Utilities).

The real estate of the terminal company "required by this act to be used by said railroad companies shall be assessed to and the taxes thereon shall be paid by said railroad companies, and in the assessment of franchise taxes upon said railroad companies each of them shall be deemed to be the owner of said real estate in the proportion in which it then has the use thereof under this act."

In 1905 New England was merged into New Haven.[6] Later Boston and Albany leased its property to the New York Central. Thereafter, in 1921, the Massachusetts Act of June 9, 1896, was amended [7] to give the New York Central, as lessee, the right to hold stock of the terminal company and, during the term of the lease, to exercise all the powers by the Act conferred on Boston and Albany. The total use of the terminal thereafter was by New York Central, as lessee of Boston and Albany, by New Haven, as lessee of Old Colony, and by New Haven, as owner of the New England line. During the period involved in this case there was no use of the terminal by the New Haven trustees on behalf of the New England line.[8]

---

[6] Massachusetts Acts and Resolves 1905, Ch. 252; Rhode Island Acts and Resolves, 1915, p. 452, § 4.

[7] Act of May 7, 1921, Massachusetts Acts and Resolves, 1921, Ch. 363, p. 391.

[8] It is asserted by respondent that such use has been resumed, but, if this be the fact, it is irrelevant to any issue in the case. No payment in respect of New England use is in question.

In 1931 the Department of Public Utilities of Massachusetts determined that the proportion of use of the union station and facilities was seventy per cent. by New Haven and thirty per cent. by New York Central. No reapportionment has since been made.

New Haven filed its petition for reorganization in the District Court for Connecticut October 23, 1935. At that time the lines of Old Colony and Boston and Providence came into the custody of the court as a part of the New Haven system. The court directed continued operation of the system and appointed trustees. Old Colony filed its petition for reorganization in the New Haven proceeding June 3, 1936, and the court appointed the same persons trustees as had been appointed upon the New Haven petition. Boston and Providence initiated a reorganization proceeding in the District Court for Massachusetts August 5, 1938, and trustees of its property were appointed by that court. The New Haven trustees disaffirmed and rejected the Old Colony lease June 2, 1936, and the trustees of Old Colony rejected the Boston and Providence lease July 19, 1938. Under orders of the District Court for Connecticut, made pursuant to the provisions of § 77 (c) (6), the New Haven trustees have continued to operate both Old Colony and Boston and Providence railroads for the account of the former lessors.[9] The trustees have kept their accounts covering the operations of the two lines according to a segregation and allocation of expenses and revenues approved by the Interstate Commerce Commission and by the District Court and confirmed by the Circuit Court of Appeals.[10] In the accounting, the seventy per cent. of the use of

[9] See *Palmer* v. *Palmer,* 104 F. 2d 161; *Palmer* v. *Warren,* 108 F. 2d 164, affirmed *Warren* v. *Palmer,* 310 U. S. 132.

[10] Pursuant to § 77 (c) (6), 77 (c) (10); see *Palmer* v. *Palmer, supra,* Note 9.

the terminal facilities formerly charged to New Haven as lessee is charged by the trustees to Old Colony and Boston and Providence operations in proportion to use.

The trustees' operation of Old Colony and Boston and Providence properties has resulted in losses exceeding $20,000,000 in the period between October 23, 1935, and December 31, 1939. This excess of expenditures over receipts is secured by liens on the properties. Payment of the taxes and bond interest of Boston Terminal Company has required cash advances increasing the accumulating deficit at the rate of approximately $800,000 per annum. The trustees believe that the properties of the lessors are insufficient to secure repayment of further cash advances by the New Haven estate and that to make them will jeopardize the claims of New Haven's own secured creditors. In a petition of October 17, 1939, they set forth the facts and stated their view that they should not make further advances for payment of Boston Terminal taxes and bond interest for the account of the Old Colony and Boston and Providence estates. Notice of hearing was given and a number of interested parties appeared. The District Court announced its opinion and entered an order, October 30, 1939, directing the trustees to withhold the payments in question. Old Colony Trust Company, the trustee under the mortgage of the terminal company, appealed. The appeal was prosecuted in the Circuit Court of Appeals by its successor trustee, Webster and Atlas National Bank, the respondent in this court.

The District Court overruled the contention that § 77 (c) (6) imposes an obligation on the trustees of New Haven in behalf of creditors of the lessors. The court held that the section requires the continued operation of the lessors' property, if the lessors are unable to operate, in the interest of the public. It called attention to the fact that the section provides that the operation is to

be "for the account of the lessor" and that no claim was made that failure to pay the interest or taxes in question would result in the suspension of operation of Old Colony and Boston and Providence lines. The court further held, on an analysis of the Massachusetts statute creating the terminal company, that any direct obligation on the part of New Haven to pay interest and taxes terminated with the rejection of the Old Colony lease which related back to the date of the petition for reorganization, since which time the trustees have not operated for their own account but for that of the former lessors. The court thought that upon plain principles of equity it ought not to jeopardize the interests of New Haven's secured creditors by imposing the probable loss upon the New Haven estate.

The Circuit Court of Appeals declined to pass upon the question whether § 77 (c) (6), of its own force, requires the New Haven trustees to make the payments as operating expenses of the former lessors, though payment is not indispensable to the continuance of railroad operations, and declined to decide whether the direct obligations imposed by the Massachusetts statute upon New Haven bound the trustees of New Haven after rejection of the leases. The court based its reversal of the District Court's order upon two federal statutes.

It held that the Act of June 18, 1934,[11] which provides that "Any receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall, from and after June 18, 1934, be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation . . . ," lays upon the trustees the obligation to pay the taxes in question. We are unable to agree.

---

[11] c. 585, 48 Stat. 993; 28 U. S. C. § 124 (a).

The question is whether the trustees, who are officers or agents appointed by the court to conduct the business of New Haven, are also, within the intendment of the statute, agents who are conducting the business of Old Colony. Stated otherwise, the inquiry is whether, in adopting the statute, Congress had in view an enforced operation of a lessor's property by the trustees of the lessee under § 77 (c) (6) to prevent stoppage of railroad transportation. We think Congress had no such intent.

The legislative history of the Act discloses its purpose. The committee reports accompanying the bill which became the Act of 1934 state: [12] "The purpose of this bill is to subject businesses conducted under receivership in Federal courts to State and local taxation the same as if such businesses were being conducted by private individuals or corporations." The reports advert to the fact that federal courts had held a federal receiver operating a business exempt from state sales taxes. They conclude: "No good reason is perceived why a receiver should be permitted to operate under such an advantage as against his competitors not in receivership, and the States and local governments be deprived of this revenue."

What Congress intended was that a business in receivership, or conducted under court order, should be subject to the same tax liability as the owner would have been if in possession and operating the enterprise. In the light of this purpose, the Act does not impose upon the New Haven trustees the obligation to pay taxes arising out of the conduct of the business of Old Colony or Boston and Providence. Section 77 (c) (2) accords the trustees of a railroad in reorganization the right to reject burdensome leases. Section 77 (c) (6) provides

---

[12] H. R. 1138, 73d Cong., 2d Sess.; S. Rept. 1372, 73d Cong., 2d Sess.

that if a lease of a line of railroads is so rejected it shall be the duty of the lessor to operate the line unless it be found impracticable for the lessor so to do, "in which event it shall be the duty of the lessee to continue operation on or for the account of the lessor." The taxes in question are, in the words of the Act of 1934, "applicable to" the business of Old Colony, and Boston and Providence. The New Haven trustees having rejected the Old Colony lease, they are no longer applicable, in any proper sense, to the business of New Haven.

By § 77 (c) (2) the trustees of a railroad in reorganization are given power to operate "the business of the debtor." By subsection (c) (4) the trustees are required to file schedules and information disclosing "the conduct of the debtor's affairs." The New Haven trustees' duty is to conduct the business of New Haven. Old Colony petitioned for reorganization and trustees were appointed in that proceeding as "trustees of the property of Old Colony Railroad Company," and were granted, pursuant to § 77, power to operate "the business of Old Colony Railroad Company." The trustees of Old Colony, as such, are the persons who, in the language of the statute, are "authorized by said court to conduct" the "business" of Old Colony.

Upon the petition of a creditor for the reorganization of Boston and Providence, which alleged that company was a common carrier by railroad engaged in the transportation of persons and property in interstate commerce, and that the Connecticut District Court had ordered the operation of its line to be continued by the New Haven trustees for the account of Boston and Providence, and upon the company's admission of the truth of the allegations of the petition, the Massachusetts District Court approved the petition and appointed trustees for the property of Boston and Providence. The appointment was confirmed by the Interstate Commerce Commission

and the trustees are in office. As in the case of Old Colony, these trustees are the persons who are conducting the business of Boston and Providence and not the New Haven trustees.

If the trustees of either of the lessor's properties were able to operate the lines of railroad and from the proceeds of that operation, or from any other source, were in possession of available funds, it would be the duty of the court in view of the Act of 1934 to require them to pay the taxes applicable to the business they are conducting under the orders of the court. But it does not follow that the New Haven trustees, who are not conducting the business of Old Colony or Boston and Providence, as such, but who, under the constraint of § 77 (c) (6), are merely operating the lines of those companies to prevent public inconvenience are, in the contemplation of the Act of 1934, conducting the business of the lessors in such sense as to be liable, out of New Haven estate funds, for taxes owed by those companies. It would require very clear and explicit language to evince an intent on the part of Congress to appropriate the moneys of the New Haven estate, which has rejected the Old Colony lease and rid itself of the leasehold interest thereby created, to pay the taxes of its lessor. We find in the Act of 1934 no such clear expression. On the contrary we think it plain Congress did not have in mind, in adopting that statute, any such situation as is created by § 77 (c) (6).

The Court of Appeals was of opinion that an obligation is imposed upon the New Haven trustees to pay the bond interest of the terminal company by § 65 of the Judicial Code,[13] which provides:

"Whenever in any cause pending in any court of the United States there shall be a receiver or manager in

---

[13] 28 U. S. C. § 124.

possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the State in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. Any receiver or manager who shall willfully violate any provision of this section shall be fined not more than $3,000, or imprisoned not more than one year, or both."

The court held the statute applicable by regarding its letter, and, as we think, ignoring its obvious purpose. In the words of the statute, the trustees of the New Haven are "in possession" of certain property belonging to Old Colony, and Boston and Providence. They also are operating that property. Hence the Court of Appeals concluded that the Massachusetts Act of 1896,—a valid law placing upon New Haven an obligation to pay the bond interest of the terminal company,—binds the trustees, so long as they operate the properties, to comply with the New Haven's statutory obligation.

Section 65 is not a new enactment. It has its origin in § 2 of the Act of March 3, 1887 [14] and it has frequently been interpreted and applied by the courts.[15] Its obvious purpose was to negative the idea that a federal receiver or trustee could ignore the rules of law of the state of operation affecting the conduct of the business committed to his charge. In this sense it has been interpreted and applied and, in this sense, it is certainly binding upon the trustees of New Haven so long as they operate the property of the former lessors. The application of the Act by the court below goes much farther

---

[14] c. 373, 24 Stat. 552, 554.

[15] See e. g. *United States* v. *Harris,* 177 U. S. 305; *Erb* v. *Morasch,* 177 U. S. 584; *Gillis* v. *California,* 293 U. S. 62; *Hornsby* v. *Eddy,* 56 F. 461; *Peirce* v. *Van Dusen,* 78 F. 693.

than this. If valid state laws require a debtor to pay his debts then, under the decision of the court, such laws bind the New Haven trustees to pay the debts of Old Colony, and Boston and Providence. If this view were correct, the trustees would not be operating the property of those companies for the account of the latter as § 77 (c) (6) provides. On the contrary, they would be operating for the account of the New Haven estate. Moreover, on this assumption, the New Haven estate would be compelled to pay the former lessors' debts as they accrued. The result would be a preference of the creditors of the confessedly insolvent lessors as against the creditors of the New Haven whose trustees are operating the Boston and Providence and Old Colony property only under the constraint of § 77 (c) (6). We think that to state the proposition is to demonstrate that § 65 of the Judicial Code has no such purpose or effect.

We are of opinion, as was the District Court, that nothing in § 77 (c) (6) works the inequitable result that the involuntary operation of the Old Colony, and Boston and Providence properties by the New Haven trustees requires them to advance New Haven's funds, without security, for the payment of obligations of the former lessors which are not essential to the continued operation demanded of the trustees.

How far cash advances to the former lessors should go; whether the security for further advances is adequate; whether advances are necessary to continued operation; are all questions to be decided by the District Court having jurisdiction of the New Haven reorganization proceedings. These are problems of administration to be solved by the exercise of a sound discretion. Upon the uncontested facts, we think the District Court exercised such a discretion in ordering the withholding of further cash payments towards the taxes and interest of the terminal company, and that its order should stand.

The District Court discussed at some length the provisions of the Massachusetts Act of 1896 chartering the terminal company. The respondent insists that the court erroneously construed the Act and held that it will not sustain any claim on the part of the terminal company, or the State or the City of Boston, against the New Haven estate in respect of the interest on the terminal company's bonds and taxes assessed on its property and franchise. The trustees' petition sought an order dealing only with the current administration of the New Haven estate and the District Court need not have decided, and we think did not decide, any question other than that presented. In any event, no question of the validity of any such claim is presented on this record and our affirmance of the District Court's order is not to be taken as the expression of an opinion upon any such question.

The judgment of the Circuit Court of Appeals is reversed and that of the District Court is affirmed.

*Reversed.*