### BOSTON TERMINAL CO. v. MUTUAL SAVINGS BANK GROUP COMMITTEE et al.

#### No. 3760.

Circuit Court of Appeals, First Circuit.

April 23, 1942.

B. A. Brickley, of Boston, Mass. (Oliver R. Waite and Brickley, Sears & Cole, all of Boston, Mass., on the brief), for appellant.

Damon E. Hall, of Boston, Mass. (Thomas M. Reynolds, George B. Rowlings, Tyler, Eames & Reynolds, James N. Clark, Philip N. Jones, Hurlburt, Jones, Hall & Bickford, and Rutherford E. Smith, all of Boston, Mass., on the brief), for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

These are consolidated appeals from six orders of the District Court entered in proceedings for the reorganization of appellant, the Boston Terminal Company, under § 77 of the Bankruptcy Act, 11 U.S. C.A. § 205. Appeals from some of these orders have now become moot; and for an understanding of the question presented it will be necessary to refer in detail only to the order of November 17, 1941, entered on petition of appellees herein, the holders of the greater portion of the outstanding bonds of the debtor corporation, which order extended for a period of six months to and including May 20, 1942, the time within which the debtor shall file its plan of reorganization, and enjoined the debtor from filing any such plan prior to or during the said period of extension until further order of the court.

As appears from appellant's statement of points, the sole question presented is whether the District Court has power to enjoin the filing of a plan of reorganization by the debtor in proceedings under § 77 of the Bankruptcy Act relating to railroad reorganizations. Appellant explicitly disclaims any suggestion of abuse of discretion by the District Court if it should be decided that the issuance of an injunction against the filing of a plan by a debtor in

proceedings under § 77 is within the power of the District Court.

The Boston Terminal Company was incorporated in 1896 by a special act of the Massachusetts legislature,[1] with power to construct and maintain a union passenger station in Boston (now called South Station), and to provide and operate terminal facilities for the several railroad companies authorized by the Act to hold the stock of the Terminal Company. The relationship of the Terminal Company to the New York, New Haven & Hartford Railroad and the other participating railroads is set forth in Palmer v. Webster & Atlas National Bank, 1941, 312 U.S. 156, 61 S.Ct. 542, 85 L.Ed. 642, and need not be elaborated in this opinion. It is sufficient to say that according to the last apportionment made by the Department of Public Utilities of Massachusetts in 1931, it was determined that the New Haven, as lessee of the Old Colony Railroad Company, was using the South Station and its facilities to the extent of 70%, and that the New York Central Railroad Company, as lessee of the Boston & Albany Railroad Company, was making such use to the extent of 30%. Under the Massachusetts Act of 1896 the New Haven and the New York Central, in those proportions, were required to pay to the Terminal Company for such use the amounts needed to cover the Terminal Company's expenses, including interest upon its bonds, and taxes. Further, the New Haven, having the appointment of three of the five trustees or directors of the Terminal Company, was in effective control of the latter company.

In 1935 the New Haven filed a petition for reorganization under § 77 in the United States District Court for the District of Connecticut. For a time the New Haven continued to make its proportion of the payments to the Terminal Company for the use of South Station. However, on October 30, 1939, the District Court for Connecticut, on petition of the New Haven trustees, entered its Order No. 398 directing the New Haven trustees to withhold payments to the Boston Terminal Company on account of the latter's taxes and bond interest.

As a result of this suspension of payments the Terminal Company was left without means to pay its obligations as they matured, and it defaulted in payment of interest due on its bonds November 1, 1939.

The Terminal Company not having filed a petition for reorganization, certain of the appellees, as they were permitted to do by § 77 sub. a, filed a petition in the court below on November 3, 1939, for reorganization of the debtor company. On November 20, 1939, the court entered an order approving this petition, and later the court duly appointed a trustee for the debtor.

In § 77, sub. d, it is provided that: "The debtor, after a petition is filed as provided in subsection (a) of this section, shall file a plan of reorganization within six months of the entry of the order by the judge approving the petition as properly filed, * * * and not thereafter unless such time is extended by the judge from time to time for cause shown, no single extension at any one time to be for more than six months." Thus, in the absence of an extension of time, it would have been the duty of the debtor to file its plan of reorganization on or before May 20, 1940.

Meanwhile, the Circuit Court of Appeals for the Second Circuit, on appeal, reversed the aforementioned Order No. 398 of the District Court for Connecticut, holding that the New Haven trustees, while operating the Old Colony Railroad pursuant to the court's order under § 77, sub. c(6), were bound to continue payments on account of the taxes and interest charges of the Terminal Company. Webster & Atlas National Bank v. Palmer, 2 Cir., 1940, 111 F.2d 215. The situation then was, that unless this decision of the Second Circuit should be reversed on certiorari the Boston Terminal Company would have ample funds promptly to meet all of its obligations and therefore there would be no occasion to proceed with the reorganization of the debtor company.

Notwithstanding this, the bondholders of the debtor expressed apprehension that a plan of reorganization would be filed in the name of the Terminal Company, and that such plan would be likely to be drawn in the interest of the New Haven rather than in the interest of the debtor and its bondholders, in view of the New Haven's control, as aforesaid, over the Terminal Company. Accordingly the appellees on April 18, 1940, filed in the court below a petition asking the court to extend for a further period of six months from May 20, 1940, the time within which the debtor might file a plan of reorganization and meanwhile to enjoin the debtor from filing a plan. At a hearing on this petition on

---

[1] Act of June 9, 1896, Mass. Acts and Resolves, 1896, c. 516.

May 6, 1940, counsel for the debtor was unable to give assurances that no such plan would be filed by the debtor in the circumstances then existing. Therefore, the District Court, on the same day, entered an order granting the extension, and the injunction, as prayed by appellees' petition. For the same reasons, on November 14, 1940, upon petition by appellees, the District Court entered an order extending for a further period of six months from November 20, 1940, the time within which the debtor might file a plan of reorganization and enjoining the debtor from filing such a plan during the extended period without further order of the court, the case of Webster & Atlas National Bank v. Palmer, supra, being then pending before the Supreme Court on certiorari.

On February 3, 1941, the Supreme Court in Palmer v. Webster & Atlas National Bank, 312 U.S. 156, 61 S.Ct. 542, 85 L.Ed. 642, reversed the judgment of the Second Circuit and reinstated Order No. 398 of the District Court for Connecticut. The situation was then back where it was before, and because the payments from the New Haven were no longer forthcoming the Terminal Company was unable to meet its debts as they matured.

But on February 27, 1941, the Interstate Commerce Commission pursuant to § 77, sub. d, filed with and certified to the District Court for Connecticut a plan for reorganization of the New Haven. This plan, if approved by the said court, would have rendered the Terminal Company solvent and able to meet its debts as they matured and thus would have removed the necessity for a reorganization of that company.[2] It therefore seemed to the bondholders of the Terminal Company desirable that proceedings for the reorganization of that company should be further held in abeyance until Judge Hincks should have acted upon the pending plan for the reorganization of the New Haven. Hence, the court below, on

May 19, 1941, upon petition of appellees, further extended for a period of six months to and including November 20, 1941, the time within which the Terminal Company should file its plan of reorganization, and continued in effect for the period of such extension the injunction against the filing of a plan of reorganization by the debtor. Judge Hincks not yet having acted on the New Haven plan of reorganization, the court below on November 17, 1941, again on petition by appellees, extended the time within which the Terminal Company should file a plan of reorganization for a further period of six months to and including May 20, 1942, and enjoined the Terminal Company from filing any plan of reorganization during the period of such extension until further order of the court. The validity of this order of November 17, 1941, is now before us for consideration.

It is the contention of appellant that the District Court is utterly without power, in proceedings under § 77, to enjoin a debtor from filing a plan of reorganization. As above noted, if such power is found to exist, appellant does not contend that the District Court committed an abuse of discretion, under the circumstances disclosed, in entering the order of November 17, 1941.

We have no doubt that the District Court had power, upon petition of the bondholders, to extend the time for filing by the debtor of a plan of reorganization. As originally enacted, § 77 contained no time limit within which the debtor must file a plan. See § 77, sub. c(7), 47 Stat. 1476. As a result, the Interstate Commerce Commission in its 48th Annual Report, dated December 1, 1934, at page 18, reported to the Congress that "The proceedings have been delayed in many cases by an apparent reluctance on the part of the debtor corporations to present plans of reorganization." Accordingly § 77 was amended in 1935 so as to provide in subsection d, 49 Stat. 917, that the debtor must

---

[2] Judge Hincks, in the District Court for Connecticut, in an opinion on December 8, 1941, refusing to approve the plan of the Interstate Commerce Commission for reorganization of the New Haven, had this to say of the plan as it bore on the situation of the Terminal Company: "As a result the reorganized New Haven under the plan would be left forever liable to fulfill the obligations imposed by the Boston Terminal Act upon the New Haven, the Old Colony and the Boston & Providence. For under the plan the New Haven is called upon to pay the obligations of Old Colony and Boston & Providence which are already due the Terminal Company and are now in default, and through assumption of their charters to assume their future obligations to the Terminal Company in perpetuity. Thus if the proposed plan became effective, all ground for the reorganization of the Terminal Company would disappear; its debtors would then be solvent and able to pay all the debts of the Terminal Company in full as they accrue."

file a plan of reorganization within six months after the entry of the order by the judge approving the petition for reorganization, "and not thereafter unless such time is extended by the judge from time to time for cause shown." This mandatory provision was obviously inserted for the benefit of the creditors rather than of the debtors; and since the subsection does not say that the court has power to grant an extension only upon petition by the debtor, it is a fair inference that the judge may also extend the time, for cause shown, upon petition by the creditors. But whether he may, in addition, enjoin the debtor from filing its plan until further order of the court during the period of such extension, is the question now before us.

There is no express provision of law specifically authorizing the judge to enjoin the debtor from filing a plan. This omission, however, is without significance. Continental Bank v. Chicago, Rock Island Ry., 1935, 294 U.S. 648, 675, 676, 55 S.Ct. 595, 79 L.Ed. 1110.

The district courts as courts of bankruptcy by § 2 a of the Bankruptcy Act, 11 U.S.C.A. § 11 are invested "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings." After the enumeration in § 2, sub. a of specific powers in courts of bankruptcy, it is provided in subsection b of the same section that "Nothing in this section contained shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated." It may be deduced, therefore, that a court of bankruptcy has power to issue an injunction to protect its jurisdiction, since such a power is inherent in the court as a duly established court of equity. Moreover, by § 2 sub. a(15), courts of bankruptcy may "make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act [title]." 52 Stat. 843. Further, § 262 of the Judicial Code, 28 U.S.C.A. § 377, provides that "the district courts shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

Appellant insists, however, that the power to issue injunctions, which may be deduced from the foregoing provisions of law, must be limited to cases where the injunction is issued in aid of the purpose for which the district court is vested within jurisdiction under § 77, namely, the preparation and consummation of a plan of reorganization; and that where the injunction, as in the case at bar, does not aid in the reorganization of the debtor but actually brings it to a standstill, it is necessarily in conflict with § 77, citing Guaranty Trust Co. v. Henwood, 8 Cir., 1936, 86 F.2d 347, 108 A.L.R. 1020. Appellant also relies upon a statement in Continental Bank v. Chicago, Rock Island Ry., 1935, 294 U.S. 648, 676, 55 S.Ct. 595, 606, 79 L.Ed. 1110: "But a proceeding under section 77 * * * is not an ordinary proceeding in bankruptcy. It is a special proceeding which seeks only to bring about a reorganization, if a satisfactory plan to that end can be devised. And to prevent the attainment of that object is to defeat the very end the accomplishment of which was the sole aim of the section, and thereby to render its provisions futile."

We are not persuaded by the foregoing argument. It assumes that the sole function of the district court under § 77 is to drive through with the utmost speed a plan, some plan, of reorganization, regardless of the existence of temporary conditions which may make the devising of a satisfactory plan difficult, or impossible, or undesirable from the standpoint of the debtor corporation and its creditors. The Supreme Court itself recognized, in the Rock Island case, supra, 294 U.S. page 685, 55 S.Ct. page 610, 79 L.Ed. 1110, that doubts and uncertainties due to pending litigation may justify a delay in reorganization where, until the doubts are finally resolved, "the consummation, or even the preparation, of any definite plan is plainly impracticable." And the Congress has recognized that there may be situations where a hasty reorganization is undesirable, and that considerable discretion must necessarily be vested in the judge. House Rep. No. 1283, 74th Cong., 1st Sess., p. 3.[3] Furthermore, it is the duty of the court under § 77 to preserve the debtor's estate from wastage and unnecessary expense. Counsel for the debtor conceded, at the hearing before the District Court on May

---

[3] See also Craven and Fuller, "The 1935 Amendments of the Railroad Bankruptcy Law," 49 Harv.L.Rev. 1254, 1262–65 (1936).

6, 1940, that after the decision of the Second Circuit in Webster & Atlas National Bank v. Palmer, 111 F.2d 215, supra, it would have been "nonsensical" for the debtor to file a plan without waiting for the decision of the Supreme Court on certiorari. The filing of a plan of reorganization by the debtor initiates administrative proceedings before the Interstate Commerce Commission under § 77, sub. d, proceedings which may burden the debtor's estate with heavy expenses in the hiring of experts, attorneys, etc., in lengthy hearings on the plan. After the decision of the Second Circuit in the case mentioned, it was obviously to the interest of the Terminal Company's bondholders that the filing of a plan of reorganization should be delayed, even though the creditors themselves remained under the customary injunction forbidding them to enforce their liens pending the reorganization proceedings. And it was equally to the true interest of the debtor, the Boston Terminal Company, not to file a plan at that juncture.

■ Accordingly it seems clear to us that the extensions of time and the injunctions contained in the orders of the court below dated May 6, 1940, and November 14, 1940, were in aid of the court's jurisdiction and in pursuance of its duty to preserve the debtor's estate from needless expense. Counsel for appellant practically conceded this at the oral argument. But if this is so, it cannot be said flatly, as contended in appellant's brief, that a district court has no power to enjoin the filing of a plan of reorganization by the debtor in proceedings under § 77. The subsequent orders of May 19, 1941, and November 17, 1941, further extending the time and continuing the injunction, cannot be challenged for lack of power, but only for abuse of discretion in its exercise. Since appellant does not claim that there was any abuse of discretion we need not go into this. It may be noted, however, that the considerations which justified the orders of May 6, 1940, and November 14, 1940, were comparable to the considerations which moved the court to issue the orders of May 19, 1941, and November 17, 1941. The situation when the first two of these orders were entered was that if the Supreme Court should affirm the decision of the Second Circuit in Webster & Atlas National Bank v. Palmer, supra, the debtor would be amply solvent and in no need of reorganization. The situation when the second two of these orders were entered was that if the pending plan of New Haven reorganization should be consummated, the Terminal Company would be amply solvent and in no need of reorganization. However, in the latter situation the case for delay was somewhat weaker perhaps, because even if the judge should approve the plan there was another hurdle to be surmounted before the plan could become effective; under § 77, sub. d, the plan might thereafter fail of acceptance by a two-thirds majority in interest of creditors in each class, and the judge might deem it not to be a proper case for putting the plan into effect notwithstanding such non-acceptance. But if in the circumstances the creditors of the Terminal Company were willing to await the outcome, it is difficult to see how the debtor, the Terminal Company, would have just cause for complaint.

■ It happened that shortly after the court below entered its order of November 17, 1941, now appealed from, Judge Hincks (on December 8) announced his decision refusing to approve the New Haven plan. This may alter the picture; it may be, as a result, that the proceedings for reorganization of the New Haven will be protracted for an indefinite time, and that even if a plan is ultimately consummated, it may not be as favorable to the position of the Terminal Company as was the plan of the Interstate Commerce Commission disapproved by the judge. Meanwhile, the Terminal Company is "unable to meet its debts as they mature." This is one of the situations in which a debtor railroad is entitled to try for a reorganization under the procedure of § 77. As the Rock Island case pointed out (294 U.S. at page 272, 55 S.Ct. 595, 79 L.Ed. 1110), § 77 is applicable not only where the debtor is "insolvent" within the meaning of § 1(19) of the Bankruptcy Act but also where the debtor, although unable to pay promptly, may be able to pay if time to do so be sufficiently extended. Undoubtedly, the uncertainty as to the outcome of the New Haven reorganization introduces a complicating factor rendering it difficult to draft a satisfactory plan for reorganization of the Terminal Company. But if the New Haven proceedings continue to drag along there may come a time when the court below will deem it proper to permit the Terminal Company to try its hand at drafting and submitting a plan of reorganization which will take due account of the possibilities of a reorganization of the New Haven in terms favorable to the Terminal Company, and thus will be fair to the

Terminal Company creditors. After all, the debtor, too, has an interest in the consummation of its reorganization without undue delay, for as long as the proceedings under § 77 are pending, the operation of its business is taken out of its hands and lodged in the hands of a trustee appointed by the court. These, and other considerations, will no doubt be weighed by the court below, in the exercise of its discretion, if the debtor, upon our remand of the case, should petition that court for an order vacating the injunction in view of the change in the situation, or if the bondholders should later petition for a still further extension of the time for filing a plan and for a continuation of the injunction during such extended period.

The appeals from the three orders of May 19, 1941, are dismissed as moot. The two orders dated November 17, 1941, and the order dated December 8, 1941, denying the debtor's petition of November 19, 1941, to vacate the injunction, are each affirmed, with costs to the appellees.