In re NEW YORK, N. H. & H. R. CO.

No. 16562.

District Court, D. Connecticut.

March 6, 1944.

632

H. J. Wells, of New Haven, Conn., for bankruptcy trustees.

Robert H. Hopkins, of Boston, Mass., for City of Boston.

Major Fred N. Oliver and Willard P. Scott, both of New York City, for Mutual Savings Bank Group.

John L. Hall and James Garfield, both of Boston, Mass., for the principal debtor.

Foley & Hoag and F. A. Boudreau, all of Boston, Mass., for Boston Port Authority.

Colonel Henry W. Anderson, of Richmond, Va., and Curtiss K. Thompson, of New Haven, Conn., for the Institutional Group of Boston Terminal Bonds.

Joseph B. Ely and Richard Ely, both of Boston, Mass., for Protective Committee for Old Colony Railroad Company Bonds.

Mudge, Stern, Williams & Tucker and Paul D. Miller, all of New York City, for the Group of Banks Holding Collateral Notes of the Debtor.

Davis, Polk, Wardwell, Sunderland & Kiendl, Edwin S. S. Sunderland, Judson C.

McLester, Jr., and Spencer Byard, all of New York City, for the Insurance Group.

Root, Clark, Buckner & Ballantine and Owen D. Nee, all of New York City, for Bank of New York, Trustee under the New England R. R. Co. Consolidated Mortgage.

Frank & Gonnet and Arthur Frank, all of New York City, for Protective Committee for Holders of First Mortgage Bonds of the Boston Terminal Co.

Stewart & Shearer, McCready Sykes, and Francis R. Curry, all of New York City, for United States Trust Co. of New York, Trustee of Harlem River & Port Chester Mortgage.

Henry S. Drinker, Jr. and Edwin A. Lucas, both of Philadelphia, Pa., for Pennsylvania R. R., Common Stockholder.

J. J. Kaplan, of Boston, Mass., and Parker McCollester, of New York City, for Boston & Providence Stockholders Committee.

Robert E. Smith, of New York City, for Protective Committee for Holders of Common and Preferred Stock of New York, N. H. & H. R. R.

John B. Grant (of Watrous, Gumbart & Corbin), of New Haven, Conn., for City Bank Farmers Trust Co., trustee of the First Mortgage of the Central New England Ry. Co.

Robert H. Davison, of Boston, Mass., for Webster & Atlas National Bank of Boston, trustee under the Indenture Securing the Boston Terminal Company Bonds.

Damon E. Hall and Rutherford E. Smith, both of Boston, Mass., for Savings Bank Group Committee Boston Terminal Bonds.

Appleton, Rice & Perrin and Clifton S. Thomson, all of New York City, for Bank of the Manhattan Co.

Beers & Beers and William L. Beers, all of New Haven, Conn., for Bondholders Committee Boston & New York Air Line Bonds.

FitzHugh McGrew, of New York City, and Frederick H. Wiggin, of New Haven, Conn., for Bankers Trust Co., trustee under the First and Refunding Mortgage of the Principal Debtor.

James L. Homire, of New York City, Cummings & Lockwood, Counsel of Record, and Frederick Miles, all of Stamford, Conn., for Reconstruction Finance Corp.

Charles A. Coolidge, of Boston, Mass., for Old Colony R. Co.

Robert T. Bushnell, Atty. Gen., and Arthur E. Whittemore, Sp. Asst. Atty. Gen., of Mass., for the Commonwealth of Massachusetts.

Ferdinand D'Esopo, of Hartford, Conn., for Ferdinand D'Esopo, Jr.

Davies, Auerbach, Cornell & Hardy, H. C. McCollom, and Herbert A. Heerwagen, all of New York City, for Irving Trust Co., as Trustee under Collateral Trust Indenture of The New York, N. H. & H. R. Co.

Roland H. Parker, of Boston, Mass., for Special Railroad Commission of Massachusetts.

Bentley W. Warren and Donald C. Starr, both of Boston, Mass., for Boston & Providence R. R. Corp.

William J. Kane, of Baltimore, Md., for Railroad Credit Corp.

John E. Westerlund, Jr., of New York City, for New Haven Refunding Bond.

Edgar Turlington, of Washington, D. C., for Housatonic Bondholders Protective Committee.

Cornelius Hearn, Jr., for Cornelius Hearn and others.

Daniel Pingree, of Andover, Mass., for Group of 5 Old Colony Stockholders.

Guggenheimer & Untermyer and Hays, St. John, Abramson & Schulman, all of New York City, William H. Foulk, of Wilmington, Del., and John H. Breen (of Hays, St. John, Abramson & Schulman) of New York City, for Independent Bondholders Reorganization Committee.

Harold E. Staples, of Providence, R. I., for Rhode Island Hospital Nat. Bank.

Charles S. Clark, of South Duxbury, Mass., for Town of Duxbury.

HINCKS, District Judge.

The plan contained in the Fifth Supplemental Order of the Interstate Commerce Commission, which is now under consideration, leaves undisturbed New Haven equipment trusts, $15,000,000, and certain secured bond issues, $21,500,000. In addition, it deals with claims against the New Haven, secured and unsecured, amounting to upwards of $325,000,000.[1]

The only creditor opposition to its disposition of this great mass of New Haven claims comes from a Committee representing a fraction (to be unknown) of the Housatonic bonds which are outstanding in the principal amount of $2,819,000 and from three banks whose claims aggregate $1,500,000, a substantial part of which is secured.[2]

The plan provides also for the reorganization of the Old Colony, a secondary debtor herein, through a sale of its assets to the New Haven. In so doing, it modifies, downward, the claims of holders of Old Colony bonds outstanding in the amount of $22,500,000. To this treatment, a Committee having some representation of said bonds objects.

The plan also provides for the reorganization of the Providence, Warren and Bristol and the Hartford and Connecticut Western, also secondary debtors herein, through merger with the New Haven on terms to which no one objects.

And it contains an offer for the purchase of the properties of the Boston and Providence, which is under reorganization in the United States District Court for the District of Massachusetts. The Boston and Providence trustees object to the terms of this offer but they are at liberty to decline the offer if they shall be authorized so to do by the Massachusetts court.

In addition to the foregoing objectors, are committees representing about $8,000,000 of the $16,000,000 outstanding bonds of the Boston Terminal Company, which is under reorganization in the Massachusetts court and which owns the South Station in Boston,—a passenger terminal used by the Old Colony and the Boston and Providence and to a slight degree by the New Haven. These bondholders object to provisions in the plan which reduce their interest payable by the using railroads for their use of the South Station. And, like the Committee of Old Colony bondholders referred to above, they object to a "separability" provision in the plan whereby its provisions for the separate reorganization of the New Haven (together with the Providence, Warren and Bristol and the Hartford and Connecticut Western)

---

[1] The figures used in this summary are approximate only.

[2] My discussion of the claims of these three banks and my rulings on their objections are contained in my opinion of December 8, 1941 (P.R. 8947). The subject-matter was reviewed in my opinion of December 21, 1943, 54 F.Supp. 595. The discussion and conclusions thus stated are still applicable. The objections of these banks, therefore, will stand as overruled.

may go forward forthwith in the event that its provisions for the reorganization of the Old Colony shall not be finally approved.

Thus the creditor opposition is seen to emanate from something like $12,000,000 out of about $350,000,000 in claims (inclusive of Old Colony and exclusive of the two other secondary debtors) which undergo modification under the over-all plan.

Also committees representing the New Haven stock equities, common and preferred, and the Pennsylvania Railroad, a large common stockholder, object to the proposal that their equities be completely eliminated. A similar proposal for the stock equity of the Old Colony has encountered no serious objection except that a committee having a small representation of that stock at an earlier stage made a belated proposal to the court affecting the proposed merger, which in an earlier opinion I held to be neither feasible nor timely.

And in addition to these objections from the great mass of private capital involved, the Town of Duxbury, in Massachusetts, has filed objections which are neither timely, nor relevant to any issues now involved.

And certain public representatives of the Commonwealth of Massachusetts object, principally to the provisions of the plan designed to protect the New Haven from unlimited losses from passenger operations on Old Colony lines (in the event that that secondary debtor shall be merged with the New Haven) and also to the terms of an option which the plan imposes upon the reorganized New Haven (if it shall acquire the Old Colony) for a sale at salvage values, under certain contingencies, to the Commonwealth of a rail segment running into the South Station. The Commonwealth has also objected to the provisions of the plan reducing the obligations of the debtors herein to the Boston Terminal Company but, in the event that the Commonwealth shall exercise the option just referred to, it seeks the assurance provided in the plan that it may have the benefit of said reductions. And the City of Boston seeks a modification of the language of the plan believed to be necessary to protect its tax position.

### The Stock Equities

The objections, originally addressed to the Fourth Supplemental Order, to the elimination of the stock equities of the New Haven, common and preferred, and of the Old Colony common, are still pending. And the Pennsylvania Railroad, a common stockholder of the New Haven, has again appeared and renewed its objection to this feature of the plan. These objections I discussed in my opinion of December 21, 1943, 54 F.Supp. 595, which was addressed to the Fourth Supplemental Order. For the reasons stated in that opinion, all of which are still applicable, these objections must be overruled.

### Housatonics

The treatment of this issue in the pending plan differs not at all from that proposed for it in the Fourth Supplemental Order. My earlier opinion upon that Order is equally applicable to the Fifth Supplemental Order. For the reasons stated in that opinion, all pending objections to the treatment of this issue proposed by the pending plan are overruled.

### Protective Committee of Old Colony Bondholders

To the extent that the objections of this Committee, now pressed against the pending plan, were presented and ruled upon in connection with the Fourth Supplemental Order, the rulings in my opinion of December 21, 1943 are reaffirmed.

This Committee further objects that the price now fixed by the Commission for the purchase of the Old Colony assets is inadequate. But as I pointed out in my earlier opinion, the contention raises a question of valuation which under the ruling of the Supreme Court is for the Commission to make. The valuation indicated by the Commission in the Fifth Supplemental Order is amply supported by the evidence, and has not been shown to be inconsistent with legal standards, or to be predicated upon erroneous estimates. It must therefore be approved.

### Commonwealth of Massachusetts

The commonwealth of Massachusetts has renewed and somewhat expanded its objections addressed to the earlier plan. It again complains of the terms of the option which the plan (Section N 3 (a) imposes upon the New Haven (if it shall acquire the Old Colony under the plan and shall thereafter terminate Old Colony passenger service) for the sale at its salvage value of the Boston-Braintree line of the Old Colony.

When the Fourth Supplemental Order was before the court, a dispute arose as to the meaning of its provisions relating to this option. In my opinion on that Order I gave my construction of the language used. The Fifth Supplemental Order in the paragraph above cited shows that I had correctly caught the meaning of the Commission as expressed in its earlier plan.

To support the validity of this feature of the plan, it was necessary for the Commission to find (a) the existence of a public necessity and (b) that the terms fixed are fair to the debtor whose estate is thus dealt with, in invitum. Necessarily the fairness of the terms involves a valuation of the property and rights involved. I incline to believe that the Commonwealth has no standing in these proceedings, as distinguished from future condemnation proceedings, to complain of the terms. But whether so or not, the Commonwealth has not shown that the salvage value of the property is an excessive price for the property and rights covered by the option. And no one interested in the debtor's estate has complained that the terms fixed are unfair. That being so, this feature of the plan will be approved. But nothing in the applicable facts or the applicable law permits the judge to expand the burden which the Commission has proposed for the debtor's estate.

The main objections of the Commonwealth are directed against those provisions of the plan which are designed to limit the losses from passenger operations on lines now owned by Old Colony, if under the plan the New Haven shall purchase the Old Colony. This was the subject matter of considerable discussion in my opinion on the Fourth Supplemental Order. That discussion and the rulings then forecast are equally applicable to the plan as now stated. They are reaffirmed. And all pending objections in behalf of the Commonwealth will be overruled.

### City of Boston

■ The City has asked that the plan be revised to protect its rights as to taxes due or which may become due from the debtors. But no one disputes or questions the rights of the City in respect to its taxes. The plan, as I read it, in unmistakable language makes fully adequate provision to that effect. The New Haven taxes thus far have been currently discharged when due, and any future taxes on New Haven property are recognized as a prior obligation of the New Haven. Sec. L, first paragraph.

As to Old Colony taxes it is provided in Section N 4 that upon the transfer of Old Colony assets the reorganized New Haven shall "assume and pay * * * any and all taxes due to * * * the Commonwealth of Massachusetts, and * * * any city, town, or other political sub-division thereof, from the Old Colony or its trustees for any taxable period prior to the date of confirmation of the plan of reorganization without requiring proof thereof in the reorganization proceeding, etc." The point is made that there might be a time lag between confirmation and the transfer of taxable assets during which taxes might accrue for which the New Haven would not be responsible. But as to this, the underlying intent that the New Haven should assume such taxes is unmistakable. If necessary that it be spelled out in express language it is covered, I think, in the provision for the assumption of "current liabilities and obligations of Old Colony trustees incurred during the reorganization proceeding" and by the further provision that nothing in the plan "shall be construed as impairing or disturbing any present or future lien for taxes against any property." And the only reason for my reluctance to cover the point with special language in the decree to be entered herein is because I think a proper decree should not be cluttered with such detail.

Nor do I see real substance to the objection to the provision that the liability for taxes shall be subject "to the statutes of limitations normally applicable." I agree that the "normally" might as well have been omitted. But its presence appears to me wholly innocuous.

And the provisions of the plan for the assumption of Boston and Providence taxes (in the event that the Boston and Providence properties shall be acquired by the New Haven) also appear similarly to be fully adequate.

### The Boston Terminal Company

■ The Terminal Company bondholders through their Committees object to Paragraphs N 1 (c) and N 3 (c) of the plan upon the ground that these provisions are vague and constitute an illegal delegation of authority by the Commission to the court. The provisions thus challenged

must be gauged against the background of these proceedings.

Throughout the long course of these proceedings the Commission has consistently recognized that a merger of the Old Colony with the New Haven would be in the public interest. If left outside the New Haven system the fate of the Old Colony is plainly precarious. Certainly there is little prospect that any aggregation of private capital, existing or yet to be assembled, will come forward to assume the hazard of loss incidental to the ownership of a railroad normally productive of deficits. And this same hazard has proved to be a stubborn obstacle to the formulation of terms upon which the New Haven might fairly be expected to take over the Old Colony. The search for a suitable solution has been extended in time and scope. I think it conservative to say that but for the extraordinary complications inherent in this problem the reorganization of the New Haven could have been accomplished five or six years ago.

In the search for a solution extended studies developed the fact that the chief factors contributing to the difficulties of the Old Colony are (1) the losses from its passenger service, particularly on the so-called Boston Group of lines which serves a thickly populated district in which the commuting density is high, and (2) the fixed charge of the Old Colony on account of its obligations under the Boston Terminal Act. The first factor was dealt with in the plan contained in the Commission's Order of February 18, 1941, but the solution there provided was not acceptable to the great majority of New Haven security holders and was such that I could not give it approval for the reasons stated in my opinion of December 8, 1941 (Printed Record 8947) on that plan. And in that plan, the second factor was not dealt with at all.

Thereafter extended negotiations were had between New Haven and Old Colony interests,—negotiations in which an Assistant Attorney General of the Commonwealth continuously participated,—and further hearings of wide scope were held by the Commission as a result of which the solution of the passenger difficulties of the Old Colony, which is contained in Section N of the pending plan, emerged. This solution, as a part of the Fourth Supplemental Order, I approved on the grounds stated in my opinion of December 21, 1943.

And this solution, thus approved, also affords needed and reasonable reduction of the Old Colony's fixed charge to the Terminal Company.

It is true, I think, that there is nothing in the reports of the Commission which says that the solution thus developed and now stated in the pending plan is the only possible solution of these stubborn difficulties. Perhaps further effort for the development of some alternative arrangements might result in some other plan at the expense of two or three years of additional delay, which might successfully thereafter run the gauntlet of appeals.

Read against this background I think that these challenged paragraphs of the pending plan make manifest a view on the part of the Commission that if the solution which is now under consideration shall fail of .appellate approval, it is only fair to the mass of New Haven capital to allow it at last to accomplish its own reorganization without the great delay involved in finding a solution for all the difficulties of the Old Colony which may then be left for further disposition under the applicable law. And when the Commission, which has grappled so long with this problem, has come to hold that view I see no reason why it may not properly give it effective expression at this stage. Thus, if an Appellate Court shall hold that the Terminal Company features of the pending plan are not appropriate for its approval the Commission has in effect provided that the plan for the reorganization of the New Haven, if found to be free from vitiating features, may proceed forthwith.

If on appeal the Terminal features of the plan are not sustained, the appellate mandate of course must be honored by this court and the Commission. If such a mandate comes down, do the legal formalities provided by Section 77, 11 U.S.C.A. § 205, really require that this court, having amended its decree, must refer the plan back to the Commission for further proceedings and an opportunity then to express its view as to the course of proceeding when its conclusions as to that course upon a comprehensive record have already been reached and given expression in the paragraphs of the plan now challenged? Or as a vastly more expeditious alternative, may the court forthwith upon receipt of the appellate mandate give it effect and make suitable

arrangements for carrying out the considered conclusion of the Commission that in the contingency which shall then have come to pass the New Haven should be separately reorganized without further delay?

That is the question. And upon the question my ruling is to the effect that the second alternative just above stated is not only inherently sensible but also consistent with the spirit and the letter of Section 77. I find no provision in that Act which stipulates that the Commission, formally in banc, must officiate at the interment ceremonies of a defunct proposal.

Equally untenable is the contention that the language of these paragraphs is fatally vague. On argument it was asserted that under these paragraphs the court was purportedly given power to write a new plan in the event that all the provisions of the pending plan on appeal should be found to be invalid. But this plainly is not so. The paragraphs are conditioned upon an appellate finding that "any features of the plan relating to the obligations of the principal debtor and of the Old Colony to the Boston Terminal Company shall be held to be illegal." And the contingency is further qualified by the provision that the remaining provisions of the pending plan, which the court is left to put into effect, shall be "not inconsistent with the directions of the appellate mandate." Thus limited, the power left in the court is seen to be not a broad power to propose and carry into effect a new plan but merely the power promptly to put into effect a plan for the New Haven proposed by the Commission, approved by this court and either approved or not disapproved by the appellate courts, with incidental power to make necessary adjustments in the mechanics, as distingushed from the substance, of the plan.

Indeed, it may be doubted whether Terminal Company interests have any standing to complain of these paragraphs. For after all, the only effect of these paragraphs can be to accomplish, if the Terminal Company interests shall prevail upon the merits of their appeal, the complete deletion of all provisions from the plan which purport to modify existing obligations of the principal debtor to the Terminal Company. That they should complain, first, against any modification of their rights and, then, against the prompt deletion of the provisions purporting to accomplish such modifications is indeed anomalous.

Even if these objections to Section N 1 (c) and 3 (c) be abandoned on appeal, I venture to express the hope that if the appellate court shall sit in review upon the decree herein, it will express its conclusions upon the validity of these paragraphs,—at least if it shall reverse the decree because of the Terminal features of the plan. For in the event of such a reversal, this court will need to know whether it may safely proceed under these paragraphs. It would indeed be a ghastly misadventure if the court should utilize these paragraphs for the separate reorganization of the New Haven only to learn of their invalidity on a second appeal.

■ Section N 1, paragraph (a) of the plan provides, in lieu of the terms imposed by the Boston Terminal Act, alternative, reduced terms under which the New Haven and the Old Colony may continue to use the South Station. Paragraph 1 (b) thereof makes it plain that the acceptance of these terms by the Boston Terminal trustee shall operate as a waiver (1) of any claim in damages in these proceedings as also (2) of any claim for compensation for the use of the South Station by said using railroads under the operation of the New Haven trustees in these proceedings. But paragraph 1 (b) also provides the Terminal trustee with a right of election; in lieu of accepting the reduced terms just referred to with their concomitant waiver of all claims for damages and compensation, he may elect instead to exclude said using railroads and claim in damages.

To be sure, in the event that the trustee shall thus elect to "exclude", nothing is expressly said as to his right to look to the trustees of the using railroads for compensation. On argument, I understood counsel to attack the plan as unreasonable and invalid in that it deprived the Terminal Company of all right to compensation for the use of its property made by the using railroads in these proceedings. But the same objection was previously addressed to the Fourth Supplemental Order. It was then urged that the use made of the South Station by the using railroads during these proceedings was an administration expense which the Terminal trustee was entitled to have adjudicated by the court. This contention I sustained in my opinion on that Order (Printed Record 10,754), noting

however that acceptance of the reduced terms operated as a waiver of that item.

I reaffirm that ruling now. If, as is intended and acknowledged, the Terminal Company has this right and if, as is the fact, there is nothing in the Fifth Supplemental Order to deprive it of this right, surely the right remains unimpaired. This conclusion is corroborated by the language of Section N 1 (b) which expressly provides that an acceptance of the reduced terms shall operate as a waiver of all right to compensation for the use of the property during these proceedings but omits all mention of said waiver in the alternative event that the Terminal trustee shall elect "to exclude."

■ Section 1 (b) also states that the right of election therein provided is "to be exercised upon the submission to him (i.e., the trustee of the Terminal Company) by the Commission of the plan for acceptance or rejection under Section 77(e)." I agree with the bondholders that at first glance this language is not wholly plain. Under Section 77, (sub.e) of the Bankruptcy Act, 11 U.S.C.A. § 205 sub.e only creditors whose claims "have been filed and allowed" are entitled to have an approved plan submitted to them for acceptance or rejection. The Terminal Company is not such a creditor: it has no claim which has been filed and allowed. The plan gives it, however a right of election and hence it was wholly appropriate that the plan should be submitted to it as official notice that it was at liberty to exercise that right. And a submission being thus appropriate, it was equally appropriate that the submission should be in accordance with the procedure required under Section 77, sub.e which is all that is meant by the language now under criticism.

The clause above quoted is also perhaps confusing in that it calls for a submission of the plan to the trustee for "acceptance or rejection." Why, indeed, should he be called on to accept or reject the plan when he has no votable claim? But the context shows plainly that by "acceptance" is meant an acceptance of the reduced terms of the plan (with the concomitant waiver) and that "rejection" there means a rejection of the offer of those reduced terms. (Cf. Printed Record 10,847.) This is plainly so even though a few lines above (12th line from bottom, Printed Record 10,909) the context shows that the word "rejection"

is used as referring to a rejection in behalf of the using railroads of their statutory obligations to the Terminal Company. That the phraseology of the plan is such as to require for its understanding sufficient patience to read its words and phrases in their natural context is not adequate ground for an attack on its validity. And especially is this so when the passage under criticism, as here, deals only with a matter of procedure.

■ It being thus the clear import of the clause (in Section N 1 (b), just discussed that the period within which Terminal trustee may exercise his option shall begin with an official submission of the plan to him, the Terminal bondholders complain of the following clause which serves to terminate that period by requiring that after the submission the option shall be exercised "within such time thereafter as this Commission in its order of submission shall fix." It is said that the language is broad enough to permit the Commission to force the trustee to an election while the validity of the Terminal features of the plan is still in issue on appeal.

It is true that the language used is as broad as the objectors say. And I incline to agree that it would be unreasonable to force such an election while the validity of the Terminal features of the plan is still in issue. But there is no basis for suspicion that the action of the Commission in the premises will be unreasonable. The language is broad because at this stage the situation is fluid. When the Commission shall deem that an appropriate time shall have come to submit the plan to the trustee for his election, if no appeal shall then be pending which involves the validity of the Terminal features the Commission might well in its order of submission provide for a comparatively short period for the accomplishment of the election; on the other hand, if such an appeal is then pending it might well provide that the period should terminate, say thirty days after entry of the appellate mandate. A procedural provision with desirable flexibility may not properly be held invalid merely because it might be unwisely applied. If an improper application shall actually be attempted, it will be time enough then for the needs of the parties for relief to have consideration.

■ Nor can I sustain the charge that the proviso which concludes Section N 1 (b),—which requires any claim for dam-

ages to be filed within the two weeks next succeeding the termination of the election period—involves an unlawful delegation to the Commission of the judge's duty under the Act to fix the time within which the claims of creditors may be filed. Surely a claim resulting from the rejection of an executory obligation in a plan (as distinguished from an earlier rejection by the debtor's trustees) may not be deemed to fall within the bar of the general order which in these proceedings, as generally, was entered soon after the proceedings were instituted. Notwithstanding the insistence of counsel for Terminal bondholders that the Commission's powers under the Act are limited to those expressly granted, I think it altogether sensible to hold that when the Act expressly gave the Commission power in a plan to propose the rejection of substantive obligations of the debtor for the approval of the court, it gave it implied power also to propose a limitation of the time within which resulting claims might be filed, for the approval of the court. And I now express my approval of the proposed limitation.

 The bondholders further contend that this proviso which in its final words bars claims against "the using bankrupt railroads," purports to preclude the Terminal Company from proving and prosecuting a claim against the Boston and Providence in the Massachusetts court having supervision of the reorganization of that railroad. Surely, this involves an untenable construction. In a plan which the Commission has certified to a court which is supervising the reorganization of the New Haven and Old Colony, a reference to "the using bankrupt railroads" must be treated as limited to the only railroads which are in this court for reorganization. And it will be noted that in Section O (1) of the plan it is expressly contemplated that the acquisition of the Boston and Providence shall be dependent upon the approval of a cognate plan for that railroad by the Massachusetts court. Any right of Terminal bondholders to prove a claim against that estate will depend upon the determination of that court: it is not precluded by any provisions of the plan in issue here.

 This brings me to the main contention of the Terminal Company which I ruled upon in my opinion of December 21, 1943, but which is now vigorously renewed. It is insisted that the analogy between the Terminal Company here and the Terre Haute lessor in the Milwaukee case (Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & P. R. Co., 318 U. S. 523, 63 S.Ct. 727, 87 L.Ed. 959)—an analogy which I discussed in my earlier opinion—is inapposite for present purposes because the obligation which was modified in the Milwaukee case was one resulting from the voluntary and intra vires acts of the contracting parties, and similarly subject to modification, whereas here the original obligation was one which arose in invitum and which the obligors are without power under the corporation laws, or under any other laws, of the Commonwealth to modify. Thus it is argued that the Terminal trustee will be without power to make the election provided for him in this plan and that the Bankruptcy Court in Massachusetts, the Constitution and laws of the United States to the contrary notwithstanding, cannot give him that authority.

The points of distinction between the Milwaukee case and the case here, I freely concede. I view the Milwaukee case only as one furnishing a useful analogy—not a precise parallel. But I observe that the Terminal interests have furnished me with no better analogy nor any taken from a more recent or more authoritative judicial decision.

The assertion that the Terminal trustee stands without power or hope of power to make the election offered in this plan and that failing such an election no federal limitation may be put upon an obligation created by the Commonwealth, completely begs the fundamental question. To be sure the assertion is sound,—if the federal power is inadequate to sanction the proposed arrangement. But the mere assertion does not demonstrate the absence of the requisite federal power.

In my last opinion I sustained the existence of that federal power. If my exegesis was insufficient to satisfy those who still object, I apprehend that further discussion would be futile. I will make only this closing observation. When a principal source of the income of these bondholders was interrupted, they did not run for protection to the Supreme Judicial Court of Massachusetts of which by virtue of the high percentage of their existence they now claim to be the inviolable wards. Instead, they turned to the Bankruptcy Court. And from beneath the shelter of

that federal umbrella, they now proclaim the impotence of their chosen protector.[3]

To this proclamation, as to their earlier argument, I have listened with attention. But I am still unconvinced.

### Effective Date

In my opinion on the Fourth Supplemental Order I expressed some uncertainty as to the intended effect of its provisions relating to the effective date of the plan. These doubts are set at rest by the provisions of the pending Order on that subject-matter. No objections to this feature of the plan are now interposed and it may be approved.

### Conclusion

The comment and discussion set forth above I think sufficient to cover all the objections to the plan which now remain. Its uncontested content, which covers vastly greater area, I have carefully reviewed. I conclude that under Section 77 of the Bankruptcy Act as construed by the Supreme Court I should now approve the plan.

I do so approve. And a decree to that effect I shall enter forthwith.

Note: The rulings indicated in this opinion were translated into a decree entered March 6, 1944.

---

[3] On October 30, 1939, over opposition by Old Colony Trust Company, as trustee under the Boston Terminal mortgage, order No. 398 was entered, which was subsequently affirmed on February 3, 1941 in Palmer v. Webster & Atlas Nat. Bank of Boston, 312 U.S. 156, 61 S.Ct. 542, 85 L.Ed. 642.

On November 3, 1939, three Boston Terminal bondholders filed a petition for the reorganization of the Boston Terminal Company in the United States District Court for the District of Massachusetts and ever since proceedings for the reorganization of that corporation have been pending in said court. The signatures of two of the three petitioning creditors named in this petition were notarized before counsel for Old Colony Trust Company, trustee.

On November 28, 1939, counsel for the Old Colony Trust Company, as trustee under the Boston Terminal mortgage, filed a notice of appeal from Order No. 398.

On December 13, 1939, a bill in equity was filed in the Supreme Judicial Court of Massachusetts seeking a mandatory injunction requiring the New Haven trustees to use the South Station and pay therefor in accordance with the Boston Terminal Act. This bill was brought by the Webster & Atlas National Bank, as successor trustee under the Boston Terminal mortgage, and by the same counsel who theretofore had represented Old Colony Trust Company as said trustee, "for the benefit of the Boston Terminal Company, and also in its own behalf as trustee under said mortgage indenture for the protection of the rights and interests of the bondholders." The bill contained no mention of the then pending proceedings for the reorganization of the Boston Terminal Company in the United States District Court for the District of Massachusetts. Before the aforesaid bill was filed, a motion was filed in this court for leave to sue the New Haven trustees in the premises. This motion was presented to the undersigned by counsel for Webster & Atlas and counsel for Massachusetts Savings Bank Committee for Boston Terminal Company bonds, who after some discussion withdrew the same without ruling by the court.

On the filing of said bill in the State Court service in Massachusetts was promptly made on Mr. Sawyer, one of the New Haven trustees, and service in Massachusetts was made on Mr. Palmer, another of the New Haven trustees, in April, 1940. Personal service in Massachusetts has never been made on Mr. Loomis, the third New Haven trustee. Since December, 1935, the New Haven trustees have maintained an agent in Boston, Massachusetts, authorized to receive in their behalf service of legal process against them. To the bill the New Haven trustees originally interposed special appearances but on May 27, 1940, filed a general appearance. On April 2, 1941, in behalf of the New Haven trustees counsel filed a general demurrer to the bill and a plea based upon res adjudicata. Since that time there has been no further prosecution of the bill in the State Court.