**KOPPEL INDUSTRIAL CAR & EQUIPMENT CO. v. LEE.**

(Circuit Court of Appeals, First Circuit. January 6, 1925.)

No. 1784.

1. **Receivers** ⊙▬163—**Receiver held liable for value of personalty on which claimant held a lien at the time the receiver took possession.**

Where a receiver took possession of and used railroad equipment sold by claimant to defendant, and on which it held a preferred lien, claimant was entitled to the admitted value of the property at the time it was taken over by the receiver, and could not be compelled to ac-

cept the proceeds of its sale after it had been used by the receiver for several months.

2. **Appeal and error** ⊙▬327(9)—**Parties; general creditors are sufficiently represented by receiver in appellate proceedings.**

The general creditors of a receivership estate are sufficiently represented by the receiver in appellate proceedings.

Anderson, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Porto Rico; Arthur F. Odlin, Judge.

Proceeding in equity between the Koppel Industrial Car & Equipment Company and Albert Lee, receiver. From a decree determining the amount of the Koppel Industrial Car & Equipment Company's preferred lien, it appeals. Reversed and remanded, with directions.

Francis H. Dexter, of San Juan, Porto Rico, for appellant.

Henry G. Molina, of San Juan, Porto Rico (Leopoldo Feliu, of San Juan, Porto Rico, on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is the same case in which the court rendered an opinion January 10, 1924. Lee v. Koppel Industrial Car & Equipment Co. (D. C.) 295 F. 23. We then held that the order of the federal District Court for Porto Rico, allowing the claim of the Koppel Industrial Car & Equipment Company at $38,739.71 as a preference and prior claim, on the ground that it was a part of the operating expenses of the receivership, with interest on a portion of the sum from July 8, 1921 (the date of the receivership), and interest on another portion from January 30, 1921 (the date of the maturity of one of the notes given the claimant by the Central Puerto Real, the debtor), was erroneous; that the Koppel Industrial Car & Equipment Company (claimant) had no lien or preference for the cost of the rails that were purchased and laid prior to the receivership, amounting to $8,344.67, as they had become a part of the realty; but that it had a lien or preference in the movable property that remained in the possession of the debtor or its receiver, and to the value thereof at the time when the claimant's right took effect; and that its right took effect and was to be determined as of the date of the beginning of the receivership proceedings, after which time interest stopped.

In other words, the claimant was entitled

to have his security sold or valued as of the date of the receivership proceedings and that no interest could be allowed after that date, citing Sexton v. Dreyfus, 219 U. S. 339, 344, 345, 31 S. Ct. 256, 55 L. Ed. 244.

It was also pointed out in the opinion that the receiver's amended report of July 19, 1922, showed that there was movable property in the hands of the receiver, previously sold by the claimant to the debtor, which the receiver had used in the conduct of the debtor's business as receiver, and which, in January, 1922, at the time he took it for use, he valued at $10,571. In that report the receiver not only admitted that the said movable property, in January, 1922, was of the value of $10,571, but stated that the same was essential in carrying on the business of the Central Puerto Real, and must be used by him during the present crop, if the business was to be carried on; that 75 small cane cars in his hands were not needed in the operation of the plant, and should be either returned to the claimant or sold. He therefore recommended that the claimant be allowed priority under section 1823, paragraph 1, of the Civil Code of Porto Rico, for the balance of its claim to the extent of the value of said used materials, to wit, $10,571.

The contention of the receiver at the time the case was previously before us, the 75 small cars then not having been sold, was "that the decree or order [then] appealed from should be reversed, and a decree entered allowing the claimant priority to the extent of $10,571, and the appellee ordered to pay costs of this appeal," and this court, in its opinion, in speaking of the contentions of the receiver, further said: "Our general conclusions are that the receiver was substantially correct in his contentions as to the nature and extent of the plaintiff's right to priority." Having reached this conclusion, we reversed the decree of the District Court, and remanded the case to that court for further proceedings. The matter then came on for hearing in the District Court, and it appearing that the 75 small cane cars had, subsequent to the prior decree, been sold at public sale for $750, and the balance of the movable property in the receiver's hands for $2,157.95, making a total of $2,907.95, a decree was entered for the claimant in that sum, and this appeal was taken.

[1] We think the District Court misinterpreted the opinion of this court and that the claimant was entitled to have a priority or preference to the extent of the value of the movable property in the possession of the debtor at the date of the receivership and before the property was used by the receiver, as that was the date at which the claimant's right arose. As previously pointed out, the record shows that the receiver admitted that (at that time) the value of the movable property, outside of the 75 small cane cars, was $10,571, and it now appears that the 75 small cane cars which were not used by the receiver were sold for $750. The claimant, therefore, should have been allowed in the District Court the sum of $10,571 plus $750, or $11,321, without interest. It would be wholly unjust to require the claimant to sustain the loss of $8,413.05, due to the depreciation of that part of the property used by the receiver; he having insisted that it was necessary to keep and use it in the conduct of the business of the receivership and for the benefit of the general creditors of the estate, and having done so.

[2] The general creditors are sufficiently represented on this appeal by the receiver, and the motion to dismiss is denied.

The decree of the United States District Court for Porto Rico is reversed, and the case is remanded to that court, with directions to enter a decree for the claimant for $11,321, with costs.

ANDERSON, Circuit Judge (dissenting). The court below seems to me to have correctly interpreted and applied the former opinion and mandate of this court. 295 F. 23.

While the former record was, as there pointed out, "inadequate for us to determine in exact detail the rights of the parties," it was carefully guarded, and did not, as I think, hold that the appellant's priority right "was to be determined as of the date of the beginning of the receivership." The date when such right took effect was left open, as is shown by the following (295 F. 27):

"It is now suggested by counsel that, since the entry of the decree complained of, the receivership property has been sold. Whether, if such sale took place, the personal property here in question was set up and sold separately, in whole or in part, we cannot know. But, as indicated above, this decision is without prejudice to the right of any of the parties in interest to show any facts—resulting from any such sale or otherwise—as may enable the court below to make an order of distribution in accordance with this opinion."

The present record shows the fact to be as we then suspected and intimated, viz. the liened property had been by public sale

transmuted into money and the appellant's rights transferred to the proceeds.

It also now appears that this receivership was liquidated as a hopelessly insolvent enterprise, and that most of the assets were subject to liens. It follows that, during the receivership, the receiver was using, and possibly impairing by use, personal property subject to liens, out of which, under some circumstances, priority rights might have accrued. The appellant was in that particular in the same position as other secured creditors. The appellant's statutory lien (a sort of continuing vendor's lien) could not, in that regard, be superior to a mortgage. The appellant at no time sought to enforce its lien against the liened property; it sought to obtain out of the general estate priority over other creditors, not to have the specific property returned or sold for its benefit.

When it sought review of our adverse decision by the Supreme Court on certiorari, it contended that the value of its security should be determined by public sale. It was so determined. But the appellant stood by at the sale, and made no attempt to bid up the property beyond the amount of $2,907.95, the amount allowed by the court below. This was a conclusive determination of its rights. It follows that the appellant's right as lienholder took effect as of the date of the sale, and not before. It was a proceeding analogous to foreclosure of a mortgage. A mortgagee, foreclosing property which has been used during a receivership, has no right to priority in excess of the value determined by the sale of the mortgaged property. Such excess, if allowed, amounts to holding general creditors liable as if for waste. As the sale of the property subject to the appellant's lien has put into the hands of the receiver only $2,907.95, and as the decision of the majority awards the appellant $11,321, the difference, $8,413.05, is assessed upon the general creditors for use or waste of the liened property, from the date of the receivership to the date of the sale. There is nothing in this record warranting a finding that the liened property was to any ascertained or ascertainable extent impaired in market value, or that the general creditors reaped any profit from the use of this liened property. The inference is that the operation by the receiver resulted in loss to all creditors, secured and unsecured. There was, therefore, on this record, no damage to the appellant, nor profit to the other creditors,

growing out of the use of this liened property.

There is another objection. There is nothing before the court, except merely the opinion, which is not really evidence, of the receiver, that the liened property was ever worth $11,321. If we assume for the moment that the appellant's right accrued as of the date of the receivership, as I think it did not, then the other creditors, whose money the court is really disposing of, are entitled to try out the value as of the date of the receivership. They are not bound by the receiver's ex parte opinion as to that value. The record shows, inferentially, that there never was a hearing on that question. The receiver's report is treated in the majority opinion as though it were the report of a master, confirmed by the court after a full hearing of all parties in interest.

There is still another objection. The appeal should be dismissed for lack of proper parties, for it appears that in the proceedings in the court below, L. W. & P. Armstrong, an unsecured creditor to the extent of $83,884.16, and the National City Bank of New York, an unsecured creditor to the amount of $243,841.73, were made parties, and filed objections to the claim now made by the appellant. They were not merely creditors, whose claims were filed and allowed; these formal parties to the record hold claims of over one-third of the total amount proved of about $975,000. They have received thereon a dividend of only 10 per cent., and only a small further dividend is in sight. The majority hold these interveners sufficiently represented by the receiver. I cannot agree. Doubtless a receiver appointed in such equity proceedings is, for some purposes, an actor, and not merely a stakeholder. Bosworth v. Terminal Co., 174 U. S. 182, 188, 19 S. Ct. 625, 43 L. Ed. 941. Even if we assume that creditors of an insolvent estate, whose claims are duly filed and allowed, are not necessary parties on such an appeal, it does not, I think, follow that creditors who are admitted as formal parties, plaintiff or defendant, can be ignored on appeal proceedings, involving a disposition of such creditors' property rights. Bosworth v. Terminal Association, 174 U. S. 182, 187, 19 S. Ct. 625, 43 L. Ed. 941. No case is cited, in the opinion of the majority or in the brief of counsel, which holds that under such circumstances such interveners are not indispensable parties. Manifestly, if the receiver legally represents these creditors, he has a right, without their assent, to dispose of the present

litigation; he might concede in this court that the court below erred, and that this court should now enter judgment for the appellant for the full amount claimed. It is to my mind inconceivable that a receiver has such right to dispose of the property of the formal parties to the record below. The appeal record I think fatally defective for lack of parties. Kidder v. Fidelity Ins. Co., 105 F. 821, 823, 44 C. C. A. 593; Gray v. Havemeyer, 53 F. 174, 3 C. C. A. 497, and cases cited.

There is clearly nothing in Bosworth v. Terminal Association, 174 U. S. 182, 19 S. Ct. 625, 43 L. Ed. 941, or in Coffey, Receiver, v. Gay, 191 Ala. 137, 67 So. 681, L. R. A. 1915D, 802, or in High on Receivers (4th Ed.) § 314, lending support to the proposition that, under such circumstances as obtain here, intervening parties, whose rights in the distribution of the insolvent estate are to be cut down, are not indispensable parties.