## In re BOSTON & PROVIDENCE R. CORPORATION.

No. 62413.

District Court, D. Massachusetts.

Feb. 25, 1948.

See also D.C., 43 F.Supp. 327.

Donald C. Starr and Warren, Garfield, Whiteside & Lamson, all of Boston, Mass., for debtor Corporation.

Paul E. Troy, of Boston, Mass., for Charles W. Mulcahy, trustee.

Jacob J. Kaplan and Nutter, McLellen & Fish, all of Boston, Mass., for Stockholders Committee.

Parker McCollester, Lord, Day & Lord, and Ralph Montgomery Arkush, all of New York City, Henry W. Anderson, of Richmond, Va., and Curtiss K. Thompson, (of Thompson, Weir & MacDonald), of New Haven, Conn., for Institutional Group for Boston Terminal Bonds.

Ely, Bradford, Bartlett, Thompson & Brown, of Boston, Mass., for Frederic C. Dumaine, holder and owner of bonds.

James N. Clark, of Boston, Mass., for George F. Mahoney, trustee of Boston Terminal Co.

Robert H. Davison and Haussermann, Davison & Shattuck, all of Boston, Mass., for Webster & Atlas Nat. Bank.

Damon Hall, of Boston, Mass., for Committee of Sav. Bank holding Terminal Bonds.

FORD, District Judge.

On January 13, 1948, this court on petition of the trustee in reorganization of the Boston & Providence Railroad Corporation entered an order fixing February 5, 1948 for a hearing of all parties in interest in support of and in opposition to the plan of reorganization, together with their claims for equitable treatment, approved by the Interstate Commerce Commission by its third supplemental report and order under date of July 13, 1943 and certified to this court in January of 1944.

Objections to the plan, within the time appointed by the court, were filed by the trustee in reorganization of the Boston & Providence Railroad Corporation; the trustee of the Boston Terminal Company, debtor in reorganization, and the Webster and Atlas National Bank of Boston, trustee under an indenture dated July 29, 1896 securing the first mortgage bonds of the Boston Terminal Company (joined in by the Mutual Savings Bank Group Committee for the Boston Terminal Company bonds and Institutional Group for Boston Terminal Company bonds); Frederic C. Dumaine, owner and holder of $2,000,000 principal amount of the $2,170,000 registered Fifteen Year 5% Gold Debenture Bonds of the debtor; Stockholders Committee of the debtor, and the debtor.

Paragraph 1 of the plan provides that upon the consummation of the reorganization of the New York, New Haven and Hartford Railroad Company, and upon payment of the purchase price as specified in paragraph 3 of the plan, the debtor, or its trustees, shall convey to the New Haven all of its assets and property of every nature and description.

Paragraph 3 of the plan specifies as the purchase price the delivery to the debtor of securities of the New Haven in the following amounts, to wit, $3,039,213 of its first and refunding bonds, $1,467,520 of its income bonds, and $1,467,520 of its preferred stock.[1] Also included in the consideration is the assumption and payment by the New Haven (subject to the limitation concerning the Boston Terminal Company in paragraph 3) of the debtor's reorganization expenses, current liabilities of the debtor incurred prior to institution of reorganization proceedings which are entitled to priority over its debentures, current liabilities of debtor's trustees; all taxes and all other claims, allowed by the date of confirmation of the debtor's plan, which rank senior to debtor's debentures.

Paragraph 4 provides that all claims held by the New Haven, or its trustees, or the Old Colony and its trustees, against the debtor and all claims held by the debtor against the New Haven or Old Colony are to be immediately discharged.

Paragraphs 5 and 6 of the plan provide as follows:

5. There shall be allotted to the holder or holders of Boston & Providence Railroad Corporation debentures New York, New Haven & Hartford Railroad Company first and refunding mortgage 4-percent bonds in a principal amount equal to the principal amount of such debentures and accrued interest thereon to the date of the consummation of the plan, after crediting to such interest the cash formerly in the sinking fund and now held by the Boston & Providence Railroad Corporation trustees. In the event that any claims not assumed by the New York, New Haven & Hartford Railroad Company and ranking equally with the Boston & Providence Railroad Corporation debentures have been allowed by the court prior to the date of the consummation of the plan, holders of such claims also shall be allotted New York, New Haven & Hartford Railroad Company first and refunding mortgage 4-percent bonds in a principal amount equal to the aggregate amount of such claims.

6. There shall be distributed pro rata among the holders of Boston & Providence Railroad Corporation capital stock, exclusive of the stock formerly in the sinking fund, the remainder of the New York, New Haven & Hartford Railroad Company securities received by the Boston & Providence Railroad Corporation trustees. In the event that any claims subordinate to the Boston & Providence Railroad Corporation's debentures are allowed by the court, the matter of the reallocation of the securities herein allotted to the Boston & Providence Railroad Corporation's stockholders shall by appropriate action then be brought before us.

■ It is clear that the plan does not provide for the issuance of sufficient first and refunded 4% mortgage bonds of the New York, New Haven and Hartford Railroad to meet the requirements of paragraph

---

[1] This was the precise offer made by New Haven and adopted by the Commission in its initial report and order of March 22, 1940. The Commission might consider in further proceedings whether any factors have arisen since 1940 that would affect the price to be paid for the debtor's assets.

5 of the plan as will be seen from the following tabulation:

Face amount of Boston & Providence debentures    $2,170,000.00
Accrued interest to Jan. 1, 1948                  1,085,000.00

Total                                            $3,255,000.00
Sinking fund                                         75,615.13

Fixed interest bonds required for debentures     $3,179,384.87
Fixed interest bonds available   3,039,213.00

Insufficiency of fixed interest bonds            $ 140,171.87

Thus it is seen at the outset that the plan does not provide adequate means for its execution, Section 77, sub. b(5) of the Bankruptcy Act, 11 U.S.C.A. § 205, sub. b (5), and must be referred back to the Interstate Commerce Commission for further action.

■ There are other reasons, in this court's opinion, why the plan should be disapproved.

Paragraph 2 of the plan provides as follows:

2. The Boston & Providence Railroad Corporation's charter shall be amended, and its franchises and statutory obligations shall be amended or superseded, so that (a) the New York, New Haven & Hartford Railroad Company and the Boston & Providence Railroad Corporation shall be relieved of any obligation to continue to use the property of the Boston Terminal Company, and of any obligation to make any payments for such use, if and when such use shall be discontinued; (b) the obligations of new York, New Haven & Hartford Railroad Company and the Boston & Providence Railroad Corporation and their trustees to make payments on account of interest and principal (at maturity or otherwise, including any deficiency on foreclosure or any other claim with respect thereto) of the debt of the Boston Terminal Company represented by its presently outstanding bonds (or any extensions, renewals or refunding thereof) after the date on which the New York, New Haven

& Hartford Railroad Company trustees have made the last payments on account of interest on said bonds, shall, so long as the New York, New Haven & Hartford Railroad Company (for itself, as operator of the Boston group of the Old Colony, and as operator of the Boston & Providence Railroad Corporation) shall use the property of the Boston Terminal Company, be satisfied by payment by the New York, New Haven & Hartford Railroad Company of an amount per annum (and at that rate for any period of less than a year) obtained by applying to $275,000 the percentage of the total use of such property from time to time by the New York, New Haven & Hartford Railroad Company (including in such percentage prior to the consummation of the plan, use by its trustees for itself and as operators of the Old Colony, and as operator of the Boston & Providence Railroad Corporation); and (c) the obligation to pay operating expenses shall be limited to the amount of such expenses after deducting all revenues from rentals and concessions.

If the number of passengers using the South Station of the Boston Terminal Company shall substantially increase in the future, this Commission will consider an application by any bondholders of the Terminal Company to make an equitable revision of the amount payable by the New York, New Haven & Hartford Railroad Company.

This provision is similiar to Section N (1) (a) of the New Haven plan. (257 I.C. C. 9). If the plan of the debtor should become effective and the provisions of paragraph 2 were absolute in their terms, they would have the effect of (1) reducing the administration claim of Terminal for use of Terminal and its facilities during bankruptcy proceedings; (2) reducing compensation to be paid after reorganization for use of Terminal in the future; and (3) depriving Terminal of its outside revenue. Also, paragraph 2 undertakes to abrogate the obligations of the debtor, Section 4 of the Massachusetts Act establishing the Terminal Company, Acts 1896, c. 516, to bondholders of Terminal for its share of any deficiency upon foreclosure of mortgage. This claim runs directly to the bondholders

or their mortgage trustee. (Old Colony Bondholders v. New York, N. H. & H. R. Co., 2 Cir., 161 F.2d 413, 424). These provisions concededly are illegal in the form in which they appear in the debtor's plan.

The plan cannot compel Terminal to accept these terms (In re New York, N. H. & H. R. Co., 2 Cir., 147 F.2d 40, 52) nor can it wipe out the right of bondholders under the Massachusetts statute.

Judge Hincks, construing Section N(1)(a) of the New Haven plan ( In re New York, N. H. § H. R. Co., D.C., 54 F.Supp. 595, 623, December 21, 1943), recognized the defect with respect to the impairment of Terminal's claim and construed these provisions relieving the new Haven with respect to Terminal's administration claim and compensation for use after reorganization as an offer to Terminal which the latter was free to reject or accept after submission. Judge Hincks stated at page 623 of 54 F.Supp. that the acceptance of the offer would, in addition, waive its damage claim for abrogating the use of Terminal. This construction was adopted by the Commission and in its fifth supplemental report and order on the New Haven plan (February 8, 1944, 257 I.C.C. 9), the Commission added paragraph (1) (b) to the New Haven plan giving the trustee of Terminal the right to elect whether to exclude the using railroads from further occupation and use and file a proof of claim for damages or accept the terms of the offer and waive all claims for damages arising from the rejection and all claims for compensation for use of its property. With this addition to the plan the provisions referred to were held to be legal by the Second Circuit Court in 147 F.2d 40, 51, supra, January 2, 1945. In the New Haven proceedings, the offer included in Section N(1) (b) of the New Haven plan was submitted by order of the Commission to the trustee of Terminal July 24, 1947 and rejected after hearing by order of the court on August 21,

1947. Claim for damages have been filed by Terminal in the proceedings at New Haven.

As stated above, the debtor's plan in these proceedings was certified to this court in January, 1944, about six months after the Commission's third supplemental report and order of July 13, 1943. No further supplemental report and order has been made in these proceedings and the provisions of the plan are in the same form as the corresponding provision in the New Haven plan before the amendment of February 8, 1944 adding paragraph (1) (b) to the plan. The plan as it stands is illegal unless I have the power to construe the plan differently than its language plainly states and virtually rewrite it with respect to paragraph 2 by adding to the plan a section comparable in terms to Section N(1) (b) in the New Haven plan. Section N(1) (b) had been added when the court passed upon the validity of the plan in 2 Cir., 161 F.2d 413, supra. That I have this power is open, to say the least, to grave doubt. The Supreme Court in Ecker v. Western Pacific Railroad Corporation, 318 U.S. 448, 474, 63 S.Ct. 692, 708, 87 L.Ed. 892, stated that "the district court acts concerning the plans only upon the issues specifically delegated by subsection (e). As to these, its powers are negative. It may veto the plan in its entirety but may *improve it only by suggestion."* (Emphasis supplied). It seems to this court that if it were to add in the debtor's plan a provision similar to N(1) (b) of the New Haven, it would be doing something far removed from a suggestion in the light of the plain language of paragraph 2 as it now stands and the probable understanding of the Commission that the provision was legal when it filed its third supplemental report and order and, in all probability, before it had an opportunity to analyze the Connecticut court's opinion in 54 F.Supp. 595, supra.

If this court decided it had the power and construes paragraph 2 as an offer [2] to

---

[2] The offer by New Haven to acquire upon the accomplishment of the modification of debtor's obligation to Terminal. If paragraph 2 is construed as the Boston & Providence is conditioned an offer, in view of the limitation concerning the Boston Terminal Company in paragraph 3 of the plan, it is very doubtful that this alteration in the terms of the New Haven offer would be binding on the New Haven.[*] (See D.C., 54

[*] No one represented the New Haven at this hearing.

F.Supp. 595, 618, and footnote page 622.) (Cf. 244 I.C.C. 247, at which time the Commission required New Haven to pur-

Terminal in terms similar to Section N(1) (b) of the New Haven plan which, if accepted, would waive both its administration and damage claims and, if rejected, permit them to be proved, this procedure would not save the plan. If Terminal trustee rejects, there is no adequate provision to compensate Terminal for its claims in the plan, nor is there adequate provision to compensate for the claims of the bondholders. The latter claim for deficiency (the record in these proceedings shows there will be a deficiency) on the foreclosure of the Terminal mortgage could not be eliminated even if the trustee of Terminal accepted the offer (see Old Colony Bondholders v. New York, New Haven & Hartford Railroad Co., 2 Cir., 161 F.2d 413, 426). The court stated at page 425 of 161 F.2d: "Since the bondholders and Terminal's reorganization trustee are unsecured creditors whose rights the plan proposes thus to modify, provision must be made to take care of their claims." The abrogation claim of Terminal and the deficiency claim of bondholders are of equal rank with the debenture holders. These claims are not assumed by New Haven in the plan (par. 3(e)) and the administration claims are assumed subject to the limitation with respect to the Boston Terminal (par. 3). Terminal's and the bondholder's claims must be satisfied out of the 4% fixed interest bonds of New Haven paid for the debtor's assets. Paragraph 5 of the plan specifically provides how claims of equal rank to the debentures shall be paid. That paragraph reads, in part, as follows: "In the event that any claims not assumed by the New York, New Haven and Hartford Railroad Company and ranking equally with the Boston and Providence Railroad Corporation debentures have been allowed by the court prior to the date of the consummation of the plan, holders of such claims also shall be allotted New York, New Haven and Hartford Railroad Company first and refunding mortgage 4-percent bonds in a principal amount equal to the aggregate of such claims." To the extent these claims of Terminal and the bondholders are allowed, the insufficiency of the New Haven 4% bonds already shown with respect to the debenture holders of the debtor, would be materially increased. It is clear there are not sufficient 4% bonds of New Haven to satisfy the debentures and the damage and bondholders' claims. And, if Terminal rejects the offer in paragraph 2 and proves its administration claim without limitation, how is that proportion of the administration claim which, in view of the limitation in paragraph 3, New Haven does not assume, to be paid? There is no provision in the plan for it.

Another provision in paragraph 5 should be noticed. It states that claims of equal rank to debentures of the debtor allowed *prior to date of consummation* will be entitled to participate in the 4-percents of New Haven. (Emphasis suggested). It may result that the claims of Terminal and the bondholders might not be allowed until long after consummation of the plan. There is no proviso to reserve New Haven fixed interest bonds to satisfy claims proved after consummation of plan as there was of common stock to satisfy claims under Section J(17) of the New Haven plan. The effect of this would be that these claims, proved after confirmation, would not be provided for in the plan.

██ In view of what has already been said, paragraph 6 of the plan is invalid. This paragraph of the plan contemplates distribution of securities to the debtor's stockholders. With the deficiency of securities to provide for the debenture holders and the probability of claims being proved by Terminal and the bondholders of Terminal, this paragraph violates the priority rule of the Northern Pacific Railway Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L. Ed. 931; Los Angeles Lumber Products Co., v. Case, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 and Consolidated Rock Co. v. Du Bois, 312 U.S. 510, 525, 61 S.Ct. 675, 85 L. Ed. 982 cases. "The important element is the allocation of the securities so as to preserve to creditors the advantages of their respective priorities." Ecker v. Western Pacific Railroad Corporation, supra, 318 U.

---

chase Boston & Providence, provided, however that the plan of reorganization of the Boston & Providence is accepted and confirmed.)

S. page 483, 63 S.Ct. page 712, 87 L.Ed. 892.

For the conclusions and reasons above stated, the plan is not approved. On motion of the parties, it is Ordered that the proceedings be referred back to the Commision for further action.